# United States Trust Company of Baltimore, Appellant, v. Beeber.

*Case stated—Insufficient for defect in parties—Attachment execution—Mortgage—Insurance commissioner.*

Where a mortgage has been delivered by an insurance company to the insurance commissioner under the act of assembly of April 6, 1868, a judgment cannot be entered on a case stated between a judgment creditor of the insurance company and the receivers of the insurance company against the mortgagor for interest due, if the mortgagor is not a party to the case stated.

Argued Oct. 24, 1902. Appeal, No. 173, Oct. T., 1902, by plaintiff, from judgment of C. P. No. 2, Dec. T., 1897, No. 926, on case stated in suit of United States Trust Company of Baltimore v. Dimner Beeber, Alexander Simpson, Jr., and Meade Detwiler, Receivers of the Guarantors' Finance Company. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ. Reversed.

Case stated to determine to whom interest should be paid under a mortgage.

The material portions of the case stated are as follows:

1. The Guarantors' Liability Indemnity Company was in-

corporated on April 21, 1892, for the purpose of making insurance against loss, damage or liability arising from any unknown or contingent event whatever, except the perils and risks enumerated in paragraphs 1, 2 and 3 of the Act of May 1, 1876, P. L. 53.

2. On June 14, 1894, William J. Bruehl executed a bond and mortgage to the Guarantors' Liability Indemnity Company for $5,000, payable within five years from date, with interest thereon at the rate of five per cent payable semiannually, secured upon premises on Chester avenue. On November 26, 1895, the said bond and mortgage was assigned, together with other securities, by the said Guarantors' Liability Indemnity Company and deposited with the insurance commissioner of the commonwealth of Pennsylvania, in accordance with the provisions of the Act of April 6, 1868, P. L. 65.

By proper legislation the insurance commissioner of the state of Pennsylvania was substituted in lieu of the auditor general as the recipient of the deposits mentioned in said act.

3. The Guarantors' Finance Company was incorporated on April 3, 1872, as the "Penn Safe Deposit, Finance & Insurance Company," with the powers conferred upon the Fidelity Mutual Insurance & Safe Deposit Company, and subsequently its name was changed and it accepted the provisions of the Act of July 9, 1897, P. L. 239, authorizing the incorporation of companies for insurance of various kinds, and conferring upon companies already incorporated, the powers contained in the 3d subdivision of section 1 of said act, upon their filing an acceptance of its provisions in the office of the insurance commissioner.

4. On or about September 7, 1897, the Guarantors' Finance Company entered into an agreement, reciting that for and in consideration of the sum of $194,904.40, paid to it by the Guarantors' Liability Indemnity Company of Pennsylvania, it agreed "to indemnify it and save it harmless of, from and against all outstanding and unexpired risks, insurances, bonds and obligations of every kind whatsoever," and assumed all such risks in payment of all losses, damages, claims, charges and expenses which might thereafter arise by reason thereof, "it being the intention of the parties hereby to reinsure said risks, policies and contracts as to future losses and expenses." On the

same day the Guarantors' Finance Company of Philadelphia entered into another agreement, reciting that in consideraiton of the sum of $490,030.44 it assumed " payment of all debts, demands, damages, charges and obligations of every kind and description whatsoever arising out of the issuance of any policy of the said the Guarantors' Liability Indemnity Company of Pennsylvania, saving and excepting the unexpired and outstanding risks and insurances mentioned and provided for in another contract between the parties hereto bearing even date herewith," and on the same day the Guarantors' Liability Indemnity Company of Pennsylvania made an assignment, reciting the two agreements above mentioned and the fact that upon the taking effect of said agreements the Guarantors' Liability Indemnity Company retired from active business, and was succeeded by the Guarantors' Finance Company of Philadelphia, and reciting that the Guarantors' Liability Indemnity Company of Pennsylvania " does hereby as part of the considerations in said two agreements mentioned assign, transfer and convey to the said the Guarantors' Finance Company of Philadelphia, a certain fund now on deposit with the insurance commissioner of Pennsylvania, to hold as its own property, but so that the said fund may stand and remain as long as necessary as security among other things for the same debts and obligations for which it now remains responsible, as well as for the future business of the Guarantors' Finance Company of Philadelphia, and shall hereafter stand in the name of the Guarantors' Finance Company of Philadelphia, who by said agreement becomes the real party to the said obligations for which said fund is responsible."

5. Thereafter the Guarantors' Liability Indemnity Company transacted no business, and the Guarantors' Finance Company transacted the business formerly conducted by the Guarantors' Liability Indemnity Company.

6. On September 7, 1897, the Guarantors' Liability Indemnity Company was actually insolvent, and the Guarantors' Finance Company had neither assets nor liabilities, other than those thus assigned to it and assumed by it.

7. On February 19, 1898, the United States Trust Company of Baltimore brought suit against the Guarantors' Finance Company of Philadelphia in court of common pleas No. 2,

December term, 1897, No. 926, and on March 23, 1898, judgment for want of an affidavit of defense was entered, and the damages were assessed at $3,557.53. The same day a fi. fa. issued and an attachment sur judgment also issued, William J. Bruehl, the defendant, inter alia, being attached as garnishee.

8. On or about April 21, 1898, the Guarantors' Finance Company was duly dissolved by a decree of the court of common pleas of Dauphin county, and Dimner Beeber, Alexander Simpson, Jr., and Meade Detwiler, were appointed by said court receivers of said corporation and of the Guarantors' Liability Indemnity Company, into whose hands as such receivers all the assets of the said corporation passed.

9. Interest on the said bond and mortgage is now due from December 14, 1897, to date, making in all the sum of $1,000, to December 14, 1901, and demand has been made upon the said mortgagor by the said receivers for the payment of the same.

10. If the court shall be of opinion that the plaintiff's attachment legally resulted in the plaintiff's obtaining a lien on the principal and interest of said mortgage, then judgment is to be entered for the plaintiff for the sum of $3,110.05, with interest from March 23, 1898.

11. If the court shall be of opinion that the attachment issued by plaintiff secured a lien upon all interest due at the time of the laying of said attachment and thereafter to become due, but not upon the principal of the mortgage, then judgment to be entered for the plaintiff in the sum of $1,006.65.

12. If the court shall be of the opinion that no lien upon either principal or interest of said mortgage was acquired by said attachment, then judgment to be entered for the defendant.

The court entered judgment for defendant on case stated.

*Error assigned* was order of the court.

*N. Dubois Miller*, of *Biddle & Ward*, for appellant.

*George Wharton Pepper*, with him *Francis Shunk Brown*, for appellees.

OPINION BY WILLIAM W. PORTER, J., December 13, 1902:

The judgment was entered for the defendants by the court below. The purpose of the case stated is manifestly to secure a judicial answer to the question whether, in the case of a mortgage delivered by an insurance company to the insurance commissioner, under the act of assembly of April 6, 1868, the interest accruing on the mortgage can be attached in the hands of the mortgagor by a judgment creditor of the insurance company. From the case stated it appears that the United States Trust Company of Baltimore (here plaintiff) obtained a judgment against the Guarantors' Finance Company and issued an attachment sur judgment against one Bruehl. Bruehl was a mortgagor whose mortgage was held by the insurance company, but deposited with the insurance commissioner. The finance company became insolvent and receivers were appointed. The same gentlemen were appointed receivers of an insurance company from which the Guarantors' Finance Company had derived both its assets (including the mortgages here involved) and its liabilities. It will be observed that by the attachment the mortgagor, Bruehl, was required as garnishee, to answer to the plaintiff company for any moneys in his hands belonging to, or due by him to, the Guarantors' Finance Company. Bruehl as garnishee was the party most interested in ascertaining to whom the interest on his mortgage should be paid. He was not a party to the case stated. The parties thereto are the United States Trust Company, and the receivers of the Guarantors' Finance Company. The former had already secured a judgment against the Finance Company before issuing the attachment. By the terms of the case stated (and from this document alone authority is derived) the court may enter judgment "for the plaintiff" for the principal sum with interest, or "if the court shall be of the opinion that the attachment issued by plaintiff secured a lien upon all interest due at the time of the laying of said attachment and thereafter to become due," judgment may be entered for "the plaintiff" or if the court shall be of opinion that no lien was acquired by said attachment, then judgment may be entered "for the defendant."

Should we affirm the court below and hold that the attachment seized nothing, the garnishee would not be relieved from the writ of attachment since he is not a party to the case stated.

On the other hand, were we to hold that the attachment did bind Bruehl to the extent of the accrued interest, what purpose is subserved by the entry of a judgment thereon not against him as garnishee (since he is not party), but against the receivers of the original defendant company, against which a judgment had been obtained for the whole of the debt, and which judgment was itself the foundation of the writ of attachment? It appears from this that the concrete question involved affects the rights of Bruehl and that the parties before us cannot agree to bind him by any judgment we can enter. If the question, however, be abstract, and the object of the trust company and the receivers of the insurance company be simply to draw from the court an expression of opinion on the case as presented, no complaint can be made of the refusal on the part of this court, to permit a judgment to be entered. We regard the case stated as insufficient in parties to warrant the entry of a judgment upon the question sought to be raised. We therefore reverse the action of the lower court, strike off the case stated, and remit the record with a procedendo.